UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-00059 (RDM) |
| v. : | |
| : | |
| DUSTY ALLEN HIGGINS, : | |
| : | |
| Defendant : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Dusty Higgins to 36 months' probation with a condition of 21 days of intermittent confinement and a $10 special assessment. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**I.     Introduction**

Defendant Dusty Higgins, a 42-year-old Navy veteran, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

1

Higgins pleaded guilty to a violation of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G). The government's recommendation is supported by Higgins's: (1) choice to enter the Capitol building through a broken window; (2) use of violent rhetoric to advocate the overthrow of the U.S. government; (3) his preparation and planning for the events on January 6, including his decision to wear body armor; and his (4) affinity for the Proud Boys and Three Percenters.

The Court must also consider that Higgins's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed.

The aggravating factors above explain why probation without home detention is insufficient in this case.

II.     **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 29, Statement of Offense.

*Defendant Higgins's Role in the January 6, 2021 Attack on the Capitol*

Dusty Higgins joined a mob that marched from former President Trump's speech to the U.S. Capitol Building from the West. Higgins wore camouflage body armor over a jacket with long white sleeves and either a red, white, and blue knit hat or baseball cap. While approaching

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

the Capitol, Higgins heard flashbang grenades and saw rioters climbing the scaffolding and scaling the walls. Instead of turning back at this point, Higgins climbed to the Upper West Terrace and entered the Capitol building through a broken window next to the Senate Wing Door at 2:23 p.m. Below is a still image (Image 1) from a Capitol surveillance camera ("CCTV") of Higgins (circled in yellow):



*Image 1 – Higgins entering through a broken window*

While inside, Higgins filmed a video where he could be heard chanting "USA!" At the end of the video, Higgins said "we will not be fucking stopped!" Sentencing Exhibit 1. Below is a still image from that video.



*Image 2 – Higgins inside the Capitol*

While in the Capitol, Higgins walked to the Crypt. He later sent Image 3 from the Crypt to others on Instagram.



*Image 3 – Taken by Higgins in the Crypt*

4

Around 2:48 p.m., Higgins exited the Capitol out of another broken window next to the Senate Wing Door. He was in the Capitol Building for about twenty-five minutes. Image 4 is taken from CCTV and depicts Higgins exiting.



*Image 4 – Higgins exiting the Capitol around 2:48 p.m.*

After leaving the Capitol on January 6, Higgins posted multiple Tik Tok videos and Twitter pictures of himself from the riot. In one video, Higgins stated: "We are at the Capitol. We just stormed it, but you can't get far when you are outgunned. We got pepper sprayed. We got gassed." On January 7, 2021, Higgins sent a message on Instagram stating, "We are [out] gunned here. We have to rethink and orginize (sic)."

5

During his January 19, 2021 interview with the FBI, Higgins admitted that he entered the Capitol building through a broken window. He claimed that he walked around inside for about ten minutes—video evidence shows that it was twenty-five minutes—before being ushered out by police. Importantly, Higgins stated, "our constitution tells us that when we have a treasonous government they should be overthrown."

While speaking with a tipster, Higgins expressed a desire to open a Proud Boys chapter in Colorado. This tipster, who knew Higgins personally and spoke to him frequently, believed that Higgins considered himself a Proud Boy and thought Higgins had been radicalized by Proud Boys ideology. Higgins also posted Three Percenter logos and imagery on social media.[2]

*The Charges and Plea Agreement*

On February 27, 2023 the United States charged Higgins by a four-count Information with violating 18 U.S.C. 1752(a)(1 and 2) and 40 U.S.C. 5104(e)(2)(D and G). On September 29, 2023, pursuant to a plea agreement, Higgins pleaded guilty to Count four of the Information, charging him with a violation of Parading, Demonstrating, or Picketing in a Capitol Building. By plea agreement, Higgins agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Higgins now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms

---

[2] The Southern Poverty Law Center defines Three Percenterism as "a sub-ideology or common belief that falls within the larger antigovernment militia movement. Three Percenters (also known as III%ers or Threepers) claim that only 3% of American colonists fought against the British during the American Revolution, a claim that has never been proven…. They believe a small force of armed individuals can overthrow a tyrannical government, and many Three Percenters engage in paramilitary training and organizing to do so." https://www.splcenter.org/fighting-hate/extremist-files/group/three-percenters.

of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 36 months' probation with a condition of 21 days of intermittent confinement and 60 hours of community service.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Higgins's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Higgins, the absence of violent or destructive acts is not a mitigating factor. Had Higgins engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Higgins's case was his aggressive anti-government mindset on January 6, as shown by his allusions to violence and his choice to wear body armor to the Capitol building.

Higgins's statements on social media and in his interview with the FBI captured his willingness to use violence for political ends. After leaving the Capitol on January 6, Higgins

7

posted a Tik Tok video from the riot where he stated: "We are at the Capitol. We just stormed it, but you can't get far when you are outgunned. We got pepper sprayed. We got gassed." On January 7, 2021, he sent a message stating, "We are [out] gunned here. We have to rethink and orginize (sic)."

The Court should draw three troubling conclusions from these statements. First, that Higgins knew the mob "stormed" the Capitol—meaning it used force to breach the building's defenses. Second, that Higgins thought the mob didn't "get far" on January 6. The reasonable inference here is that he hoped the rioters could have gone further—or accomplished more than the hours-long delay of the Certification. Third, that Higgins believes the mob was "outgunned" by police—implying that more weapons and violence are necessary to "get further." His choice to wear body armor to the Capitol supports this belief and shows that he prepared for violence on January 6.

Higgins's statement to the FBI clarifies what he thought the goal of the mob to be: "our constitution tells us that when we have a treasonous government they should be overthrown." To apply this statement to the riot on January 6 shows a deeply held and aggressive anti-government mentality.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 36 months' probation with a condition of 21 days of intermittent confinement in this matter.

### B. Higgins's History and Characteristics

Higgins's military service record is impressive and laudable. But, in the context of January 6 and when combined with his aggressive anti-government intentions and decision to wear body armor, the Court should not fully credit Higgins's service as a mitigating factor.

Higgins's family obligations include the care of three children, two twelve-year-olds and one infant. A sentence of 21 days of intermittent confinement as a condition of probation would achieve the necessary deterrence while allowing Higgins to remain a consistent presence in the home.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

9

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy probation term with 21 days of intermittent confinement as a condition of probation.

Although Higgins accepted some responsibility by pleading guilty, he has never denounced the violence of the mob on January 6, 2021. To this point, Higgins has never made a single remorseful statement. In fact, after the riot he bragged about "storming" the Capitol, lamented the fact that the police "outgunned" the rioters, and planned for a future opportunity. Higgins statement on January 7, 2021, "We are out gunned here. We have to rethink and organize," showed his regret that the mob was "outgunned" and his plan for future political violence. Thus, the Court should view any remorse Higgins expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized

10

he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Finally, Higgin's affinity for the Proud Boy and Three Percenter ideologies embodies his aggressive anti-government mentality. These ideologies promote politically motivated violence. On January 6, 2021, Higgins joined a mob that employed politically motivated violence to imperil the peaceful transfer of power and forever damage our democracy. With the 2024 presidential election approaching, a rematch on the horizon, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Higgins in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Higgins based on his own conduct and relevant characteristics, but should

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

11

give substantial weight to the context of his unlawful conduct: her participation in the January 6 riot.

Higgins has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

This Court has sentenced many defendants who plead guilty to 40 U.S.C. § 5104(e)(2)(G), but Higgins is likely among the most aggravated. He has an aggressive anti-government mentality that is rare for a petty offense case. Higgins's (1) choice to enter the Capitol building through a broken window, (2) aggressive anti-government statements, (3) body armor, and (4) affinity for the Proud Boys and Three Percenters are unique aggravating factors. The following cases were before this Court on pleas to 40 U.S.C. § 5104(e)(2)(G), and the defendants had no significant criminal history.

In *United States v. Nicholas Reimler*, this Court sentenced the defendant to 36 months' probation with 30 days home detention. 21-cr-239 (RDM), ECF No. 38, Judgment. Reimler

12

remained in the Capitol for a similar amount of time to Higgins—nineteen minutes—but lacked all of Higgins's other aggravating factors. *Reimler*, 21-cr-239 (RDM), ECF No. 31 at 2-4, Government's Sentencing Memo. He entered through a door, not a window. He did not wear any protective gear. His social media posts did not lament being "outgunned" or describe "storming" the building. And, perhaps most significantly, Reimler had no known affinity for Proud Boy or Three Percenter ideology. Thus, to address these aggravating factors, Higgins's sentence must be more serious than Reimler's term of probation with 30 days home detention.

In *United States v. Paul Colbath*, this Court again sentenced the defendant to 36 months' probation with 30 days home detention. 21-cr-650 (RDM), ECF No. 36, Judgment. Colbath too did not share any of Higgins's aggravating factors. Colbath was inside the Capitol for less than ten minutes, and when interviewed by the FBI on January 18, 2021, he expressed regret and remorse. *Colbath*, 21-cr-650 (RDM), ECF No. 28 at 8, Government's Sentencing Memo.

In *United States v. Brian Scott McGee*, this Court sentenced the defendant to 36 months' probation with 7 days of intermittent confinement. 23-cr-96 (RDM), ECF No. 57, Judgment. Both McGee and Higgins's cases are aggravated by their statements advocating political violence, but McGee was only in the Capitol building for "less than two minutes" while Higgins was inside for about twenty-five minutes. *McGee*, 23-cr-96 (RDM), ECF No. 44 at 4-8, Government's Sentencing Memo. Higgins also wore body armor to the Capitol—which McGee did not do. Finally, Higgins's affinity for Proud Boys and Three Percenter ideologies represents a significant aggravating factor that was not present in *McGee*. These additional aggravating factors justify a longer term of intermittent confinement than the Court's sentencing in *McGee*.

Before the Circuit's decision in *Little*, the government would have argued for a split sentence in this case. Sentencing Higgins to 21 days of intermittent confinement as a condition of

13

probation would appropriately account for his aggravating factors and deter him from engaging in future anti-government violence.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Higgins must pay $500 in restitution, which reflects in part the role Higgins played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 14, 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Higgins's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 98.

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 36 months' probation with a condition of 21 days of intermittent confinement, 60 hours of community service, $500 in restitution, and a $10 special assessment. Such a sentence protects the community, promotes

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

respect for the law, and deters future crime by imposing restrictions on Higgins's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By: /s/ *Tighe R. Beach*

        TIGHE R. BEACH
        CO Bar No. 55328
        Assistant United States Attorney
        601 D Street NW
        Washington, D.C. 20001
        (240) 278-4348
        Tighe.beach@usdoj.gov